IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GAIA FONTANARI, | ) | |
| | ) | No. 37425-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE ALLEN PATRICK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — A petition for a sexual assault protection order (SAPO) may be filed by any person "[w]ho does not qualify for a protection order under chapter 26.50 RCW and who is a victim of nonconsensual sexual conduct or nonconsensual sexual penetration, including a single incident." RCW 7.90.030(1)(a). Gaia Fontanari obtained a SAPO against Bruce Patrick that he challenges on the basis that she qualified for a domestic violence protection order (DVPO) under chapter 26.50 RCW. In a pro se response, Ms. Fontanari reargues her need for protection.

We agree with Mr. Patrick that because Ms. Fontanari qualified for a protection order under chapter 26.50 RCW, she did not qualify for a SAPO. His argument that she did not qualify for a SAPO for an alternative reason is moot. We remand to the trial court with directions.

FACTS AND PROCEDURAL BACKGROUND

Beginning in August 2016, Bruce Patrick and his wife Deanna Patrick hosted then 17-year-old foreign exchange student Gaia Fontanari in their home for approximately nine months. Mr. and Ms. Patrick and their son Gary grew fond of Ms. Fontanari and the Patricks offered to pay for her college education if she wanted to return to Washington after high school. She accepted their offer. In June 2017, Ms. Fontanari moved back to Italy to finish her high school education.

Either before or upon Ms. Fontanari's return to the United States in 2018, Ms. Fontanari and Mr. Patrick became involved in an intimate, sexual relationship. Ms. Fontanari claims it began while she was still a 17-year-old exchange student. Mr. Patrick and his family assert the intimate relationship began after Ms. Fontanari returned to the United States for college. Both parties agree the relationship had begun by August 2018, when Ms. Fontanari began college.

A year later, in September or October 2019, Ms. Fontanari ended the intimate relationship with Mr. Patrick. She continued to stay at the Patricks' home for a time and the Patricks continued to financially provide for Ms. Fontanari. The parties agree that their relationship was fraught during this period of time but dispute who was being abusive to whom.

Sometime in mid-October, Mr. Patrick threatened to commit suicide in front of Ms. Fontanari. After the suicide attempt, Ms. Fontanari moved out of the Patricks' home.

2

On November 7, Mr. Patrick and Ms. Fontanari attended a mediation at a local dispute resolution center to resolve disagreements about property and the extent to which the Patricks would continue to provide Ms. Fontanari with financial support. They arrived at a settlement agreement. The agreement provided that any future contact between Mr. Patrick and Ms. Fontanari would be by e-mail.

On November 19, Ms. Fontanari petitioned the Benton County Superior Court for a SAPO against Mr. Patrick. The petition alleged Mr. Patrick began having sexual relations with Ms. Fontanari when she was 17 years old, that Mr. Patrick took advantage of her youth and financial situation, that he "pushed [her] to have intercourse with him many time [sic]" and "manipulated [her] into having sex with him." Clerk's Papers (CP) at 4. It also stated that he attempted suicide in front of her and Ms. Patrick, and that he psychologically abused Ms. Fontanari. A temporary SAPO and notice of hearing was entered.

A hearing on whether to enter a permanent SAPO was held on January 24, 2020.[1] Before the hearing, Ms. Fontanari filed a declaration in which she stated, in part:

> [Bruce] was in a position of power since, not only was he taking care of me financially but he was also a lot older than me. He abused his power and started having a sexual relationship with me when I was barely 17. I have never had a relationship before, nor had I any sexual activity prior to meeting him. He was aware of my vulnerability and my naivety and he

---

[1] Temporary sexual assault protection orders had periodically been re-entered pending the hearing.

> took advantage of those. He pushed and manipulated me to have a sexual and intimate relationship with him.

CP at 55. Declarations submitted by Mr. Patrick and his wife admitted his intimate relationship with Ms. Fontanari but claimed it was consensual.

At the hearing on the SAPO, Mr. Patrick was represented by counsel and Ms. Fontanari appeared pro se. Mr. Patrick's counsel suggested early in the hearing that the issues between Ms. Fontanari and Mr. Patrick "go[ ] more toward[ ] a maybe perhaps a domestic violence protection order, not the actual sexual protection order." Report of Proceedings (RP) at 10. The court made clear at several points during the hearing that it was aware of the DVPO option.

After hearing statements from Ms. Fontanari, Mr. Patrick's counsel, and Mr. Patrick himself, the trial court characterized the ill-considered relationship and its demise as a "very sad situation" and "probably one of the difficult decisions the Court has had in over 15 years I've been on the bench." RP at 24. It observed that 52-year-old Mr. Patrick "made a grave error in your decision with respect to the Petitioner on a number of fronts." *Id.* It observed that whether to grant the order "boils down to credibility of the parties." *Id.* Commenting on the "maturity gap" between Mr. Patrick and Ms. Fontanari, the court found she had proved by the preponderance of the evidence that there was sexual contact and "that it is non-consensual and it was a power and control." RP at 24-25. It concluded:

4

> And, therefore, *the Court was going to entertain a domestic violence protection order, however, the Petitioner has met the burden*. And, therefore, the Court will grant the request.

RP at 24-25 (emphasis added). The trial court entered the SAPO. Mr. Patrick appeals.

ANALYSIS

Mr. Patrick challenges the entry of the SAPO on two grounds: first, that because Ms. Fontanari qualified for a protection order under chapter 26.50 RCW, she did not qualify for a SAPO; and second, that there was insufficient evidence of a nonconsensual sexual act.

*Eligibility for an order of protection under chapter 26.50 RCW*

RCW 7.90.030 provides in relevant part:

> A petition for a sexual assault protection order may be filed by *a person*:
>     (a) *Who does not qualify for a protection order under chapter 26.50 RCW* and who is a victim of nonconsensual sexual conduct or nonconsensual sexual penetration, including a single incident of nonconsensual sexual conduct or nonconsensual sexual penetration.

(Emphasis added.*)

RCW 26.50.030 creates an action "known as a petition for an order for protection in cases of domestic violence." A person qualifies for a protection order under the chapter if the person is "the victim of domestic violence committed by [a] respondent." RCW 26.50.020(1)(a). "Domestic violence" is defined by the chapter as including assault, sexual assault, stalking, or the infliction of the fear of such actions by one intimate partner to another intimate partner or by one family or household member to

5

another family or household member.  RCW 26.50.010(3).  The definition of "family or

household member" includes "adult persons who are presently residing together or who

have resided together in the past."  RCW 26.50.010(6)(b).

Although not necessary to our construction of RCW 7.90.030, reports on the 2007

legislation that added the "Who does not qualify for a protection order under chapter

26.50 RCW" language, summarized public testimony in support of the change.  LAWS OF

2007, ch. 212, § 2.  The public testimony is reported to have included testimony that "We

want to ensure that those victims who qualify first seek a domestic violence protection

order, because there are provisions in there that would better meet their needs, like what

to do with custody arrangements for children."  S.B. REP. ON SUBSTITUTE H.B. 1555, at

2.  A house report similarly describes the public testimony as including testimony that

"[s]urvivors of domestic violence are better served by the domestic violence protection

orders."  H.B. REP. ON SUBSTITUTE H.B. 1555, at 2.  *See* LAWS OF 2007, ch. 212, § 2.[2]

At the hearing on Ms. Fontanari's petition, Mr. Patrick's lawyer suggested that a

DVPO was more likely the remedy called for by the facts.  His briefing on appeal is even

more clear, arguing, based on the Patricks' own version of events, that "Ms. Fontanari

---

[2] The legislation also amended RCW 7.90.005, captioned, "Legislative declaration," by adding the language, "It is the intent of the legislature that the sexual assault protection order created by this chapter be a remedy for victims who do not qualify for a domestic violence order of protection."  *Id.*; LAWS OF 2007, ch. 212, § 1.

qualified for a DVPO under chapter 26.50 RCW and therefore did not qualify for relief under [RCW] 7.90.030(1)(a)." Br. of Appellant at 12.

The goal of statutory interpretation is to carry out the legislature's intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). Where possible, courts "must give effect to [the] plain meaning [of a statute] as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Statutory interpretation is a question of law that we review de novo. *Jametsky*, 179 Wn.2d at 761.

We agree with Mr. Patrick that under the plain language of RCW 7.90.005 and .030(1)(a), Ms. Fontanari was ineligible for a SAPO because she qualifies for a DVPO under chapter 26.50 RCW.

*Evidence sufficiency*

Mr. Patrick argues that Ms. Fontanari was ineligible for the SAPO for the further reason that she failed to prove by a preponderance of the evidence when an act of nonconsensual sex between her and Mr. Patrick occurred. He bases the argument that this temporal evidence is required by RCW 7.90.020(1), which states that a petition for a SAPO shall be accompanied by an affidavit "stating the specific facts and circumstances from which relief is sought." RCW 7.90.020(1).

7

We need not address this argument. Mr. Patrick has already persuaded us that Ms. Fontanari is entitled to a DVPO and therefore not a SAPO. Any other reason he contends she was disqualified from obtaining a SAPO is moot.

In light of Ms. Fontanari's continuing concern for protection, we remand this matter to the trial court with directions to vacate the SAPO, recognizing that the court may, at the same time, consider Ms. Fontanari's eligibility for a DVPO (an option that was advocated for and considered at the prior hearing).

Remanded for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Korsmo, J.

8